USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__5/2/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X
                                                      :

THE INSURANCE COMPANY OF THE STATE : 
OF PENNSYLVANIA, et al.,                   :

                        Petitioners,    :           **17 Civ. 9327 (LGS)**

             -against-             :

                                                      :             **OPINION AND ORDER**

MIAMI-DADE COUNTY,                   :

                              Respondent. :
--------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

        Petitioners the Insurance Company of the State of Pennsylvania and National Union Fire

Insurance Company of Pittsburgh, PA ("Insurers") bring this Petition against Respondent Miami-

Dade County ("County") to compel the arbitration of a dispute arising out of their insurance

policies. Respondent moved to stay arbitration and transfer venue. For the following reasons,

the Petition is granted, and Respondent's motion is denied.

## I.     BACKGROUND

###     A.    Factual Background

        The following facts are taken from the Petition, the parties' motions and accompanying

exhibits.

        In 1989, American Airlines launched a construction project (the "Project") to route air

traffic from its domestic United States route system through Miami International Airport

("MIA") into the Caribbean and Central/South America. The County helped in the Project.

        The County secured from Insurers deductible buyback workers' compensation and

guaranteed cost general liability policies for the Project (together, the "Policies"). The Policies

covered the period from December 31, 2007, through December 31, 2012. The premiums for the

Policies were to be determined by (1) the total payroll of the contractors and subcontractors

covered under the Policies and (2) the length of time that the Policies would be in force. Insurers and the County estimated these factors to arrive at an estimated premium when entering the Policies.

The Policies state that "[t]he final premium will be determined after this policy ends by using the actual, not the estimated, premium basis." The Policies also state that "[the County] will let [Insurers] examine and audit all [its] records that relate to this policy" and that Insurers "may conduct the audits during regular business hours during the policy period and within three years after the policy period ends." The Policies state that "[i]nformation developed by audit will be used to determine final premium."

While negotiating the Policies' terms, the County expressly agreed to sign a Payment Agreement and be bound by its terms. The Payment Agreement is a credit agreement that sets out the terms of the credit relationship between the County and Insurers. The Payment Agreement states that the County "must pay" Insurers "for the insurance and services in accordance with the terms of the Policies and this [Payment] Agreement." The Payment Agreement provides that "[a]ny disputes must be submitted to arbitration" and that the arbitrators selected by the parties "will have exclusive jurisdiction over the entire matter in dispute." The Payment Agreement also states that "any action or proceeding concerning arbitrability, including motions to compel or stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York."

The Project lasted longer than anticipated. As a result, the payroll and duration of the Policies were significantly greater than initially anticipated. Insurers conducted a final audit and billed the County for the additional premium and surcharges due under the Policies. The County disputed the Insurers' audit protocols and declined to pay the additional premium. On October

19, 2017, Insurers asked the County to arbitrate the dispute over the remaining balance. On the same day, the County declined to arbitrate.

### B.   Procedural History

On November 28, 2017, Insurers served a demand for arbitration and filed a Petition to compel arbitration against the County, and in the alternative if arbitration was not compelled, to obtain damages for breach of contract. On the same day, Insurers filed a motion to compel arbitration. On January 4, 2018, the County filed a Response to the Petition. In this Response, the County raised a single counterclaim -- that Insurers breached the Policies by failing to perform annual audits. On January 5, 2018, the County filed a motion to stay arbitration and transfer this action to Southern District of Florida. On January 19, 2018, Insurers opposed the County's motion to stay arbitration and transfer venue, and moved to compel the arbitration of the County's sole counterclaim.

## II.   STANDARD

The Federal Arbitration Act ("FAA") "embod[ies] [a] national policy favoring arbitration." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)) (alteration in original). However, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original); *accord Nicosia*, 834 F.3d at 229 ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so.") (citation omitted). The court considers two factors when deciding if a dispute is arbitrable: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (citations omitted). Under the

FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Citigroup, Inc. v. Abu Dhabi Invest. Auth.*, 776 F.3d 126, 129 (2d Cir. 2015) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (citation omitted). Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Id.* (citation omitted).

## III.    DISCUSSION

The parties do not dispute that the arbitration clause in the Payment Agreement is valid or that Insurers' claim for additional payment is subject to arbitration. The issues in dispute are (1) whether the County's counterclaim for breach of contract for failure to conduct annual audits is subject to arbitration; (2) if not, whether the arbitration should be stayed and (3) whether the action should be transferred to Southern District of Florida.

### A.      The Scope of the Arbitration Clause

The County's counterclaim falls within the scope of the arbitration clause. "Where an arbitration clause is broad, there arises presumption arbitrability, and arbitration of even collateral matter will be ordered if claim alleged implicates issues of contract construction or parties' rights and obligations under it." *Louis Creyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (citation omitted); *accord Tarazi v. Truehope,*

*Inc.*, 2017 WL 5957665, at *9 (S.D.N.Y. Jul. 28, 2017). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Louis Creyfus Negoce S.A.*, 252 F.3d at 224 (citation omitted). The Court "must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." *Id.* at 225. "[V]ery expansive language will generally suggest a broad arbitration clause." *Id.*; *see, e.g.*, *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 18 (2d Cir. 1995) ("Any claim or controversy arising out of or relating to this agreement shall be settled by arbitration.").

The arbitration clause at issue is broad. The Payment Agreement's arbitration clause states that "[a]ny disputes must be submitted to arbitration" and that the arbitrators selected by the parties "will have exclusive jurisdiction over the entire matter in dispute." The Payment Agreement incorporates the terms of the Policies, by stating that the County must pay Insurers "for the insurance and services in accordance with the terms of the Policies and this [Payment] Agreement." There is no indication that the parties intended to limit the scope of the arbitration clause. The County's counterclaim that Petitioners failed to comply with its obligation to conduct annual audits implicates "the issues of [Policies] construction [and] the parties' rights and obligations under it." *Louis Creyfus Negoce S.A.*, 252 F.3d at 224 (citation omitted). Accordingly, the dispute falls within the scope of the arbitration clause. *See, e.g.*, *Citigroup, Inc.*, 776 F.3d at 131 (finding that because "Citigroup has not challenged the validity of the arbitration clause at issue and that clause, . . ., is sufficiently broad," "arbitrators are to resolve the claim-preclusive effect of an arbitration award confirmed by a state court and the issue-preclusive effect of a federal judgment."); *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Belco*

*Petroleum Corp.*, 88 F.3d 129, 136 (2d Cir. 1996) (dispute concerning the applicability of claim preclusion sent to arbitrators when the arbitration covered "all disputes which may arise under or in connection with" the underlying contract). A stay of proceedings rather than dismissal is required when all claims are referred to arbitration. *Katz v. Cellco Partnership*, 794 F.3d 341, 347 (2d Cir. 2015).

B.    **Motions to Stay Arbitration and to Transfer Venue**

The County moves for a stay of arbitration and transfer of venue based on the argument that its counterclaim is not arbitrable and that this claim should be litigated in the Southern District of Florida before the Insurers' payment claim. For reasons already stated, the County's counterclaim must be arbitrated. The County does not dispute that the Southern District of New York is the proper venue for the enforcement of the arbitration. Accordingly, The County's motions to stay arbitration and to transfer venue are denied.

IV.    **CONCLUSION**

For the foregoing reasons, Petitioners' motions to compel arbitration are GRANTED. Respondents' motion to stay arbitration and transfer venue is DENIED. Petitioners shall file letters on the status of the arbitration every 60 days, and file a letter notifying the Court when the arbitration concludes.

The Clerk of Court is respectfully directed to close Dkt. Nos. 5, 17 and 18 and stay the case.

Dated: May 2, 2018
　　　　New York, NY

　　　　　　　　　　　　　　　　　　　　　LORNA G. SCHOFIELD
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE